## CHRISTIAN UNION v. YOUNT.

1. While a corporation must dwell in the State which created it, its existence may be elsewhere acknowledged and recognized. Its residence creates no insuperable objection to its power of contracting in another State.

2 In harmony with the general law of comity among the States composing the Union, the presumption is to be indulged that a corporation, if not forbidden by its charter, may exercise the powers thereby granted within other States, including the power of acquiring lands, unless prohibited therefrom, either in tl eir direct enactments or by their public policy, to be deduced from the general course of legislation or the settled adjudications of their highest courts.

3. This court cannot presume that it is now, or was in 1870, against the public policy of Illinois that one of her citizens owning real estate there situate should convey it to a benevolent or missionary corporation of another State of the Union, for the purpose of enabling it to carry out the objects of its creation, since she permitted her own corporations, organized for like purposes, to take such real estate by purchase, gift, devise, or in any other manner.

4. Where land in Illinois was conveyed to a New York corporation, the children and heirs-at-law of the grantor, who file their bill to set aside the conveyance upon the ground that it was against the public policy of Illinois, cannot raise the question that the grantee acquired a larger quantity of lands than its charter allowed.

5. *Carroll* v. *The City of East St. Louis* (67 Ill. 568) and *Starkweather* v. *American Bible Society* (72 id. 50) distinguished.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. W. J. Henry* for the appellant.

*Mr. E. S. Terry, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was brought by Yount and others against the American and Foreign Christian Union to set aside a conveyance of certain lots or parcels of land in the State of Illinois, alleged to be of the value of $10,000, which was executed, May 19, 1870, by Stephen Griffith, a citizen of that State, to the Christian Union, a corporation created in the year 1861 under the laws of New York, providing for the incorporation of benevolent, charitable, scientific, and missionary societies in the latter State.

A decree was rendered against the corporation, and it appealed here.

The place of business and principal office of the appellant was and is in the city of New York, but there seems to be no inhibition, in its charter, upon the exercise of its functions in other States. The declared object of its incorporation was, " by missions, colportage, the press, and other appropriate agencies, to diffuse and promote the principles of religious liberty and a pure evangelical Christianity, both at home and abroad, wherever a corrupt Christianity exists."

The appellees, who are the children and heirs-at-law of Griffin, pray for a decree declaring the conveyance to be null and void, and requiring the appellant to convey to them the premises in dispute. They broadly claim that by the settled law of Illinois a foreign corporation cannot take or hold lands in that State, and that, consequently, no title passed to the

appellant from their ancestor. That is the fundamental proposition in the case, and is the only one which counsel for the appellees, in support of the decree below, has deemed it necessary to discuss with any fulness.

By the statute of New York under which the appellant was organized, it was made capable of taking, receiving, purchasing, and holding real estate for the purposes of its incorporation, and for no other purpose, to an amount not exceeding the sum of $50,000 in value, and personal estate for like purposes to an amount not exceeding $75,000 in value, the clear annual income of such real and personal estate not, however, to exceed the sum of $10,000. No question is made here as to its right, consistently with its own charter and the laws of New York, to acquire, for the purposes of its creation, real estate within, at least, the quantity designated by its charter.

The appellant, then, having this capacity by its charter, and not being expressly prohibited from exercising its powers beyond the State which created it, we proceed to inquire whether it was forbidden by the laws of Illinois in force in the year 1870 from taking title by conveyance to real property within the limits of that State, for the objects designated in its charter. For, besides the admitted incapacity of a corporation of one State to exercise its powers in another State, except with the assent or permission, expressed or implied, of the latter, it is a principle " as inviolable as it is fundamental and conservative, that the right to hold land, and the mode of acquiring title to land, must depend altogether on the local law of the territorial sovereign." *Runyan* v. *The Lessee of Coster*, 14 Pet. 122 ; *Lathrop* v. *Commercial Bank of Scioto*, 8 Dana (Ky.), 114.

By a general law of Illinois, enacted in 1859, any three or more persons of full age, citizens of the United States, a majority of whom were also required to be citizens of that State, could become a body politic and corporate for benevolent, charitable, educational, literary, musical, scientific, religious, or missionary purposes, and in their corporate capacity take, receive, purchase, and hold real and personal estate, and, for charitable purposes only, sell and convey the same. Laws of Ill., 159. p. 20 ; Gross's Rev. 124.

Corporations formed under that law were made capable of taking, holding, or receiving any property, real estate or personal, by *gift, purchase, devise,* or *bequest,* or in any other manner. Authority was given to sell real estate purchased by them for their own use, with any building erected thereon, and invest the proceeds in the purchase of another lot, or the erection of another building, or both. As to such as was devised or given to them for any specified benevolent purpose, authority was conferred to sell the same and apply the proceeds in aid of that purpose, such real estate, however, not to be held more than five years.

This general statute was in force when the conveyance to the appellant was executed. It thus appears that when its rights accrued under that conveyance the statutes of Illinois expressly provided for the incorporation of societies having objects similar to those of the appellant, and with capacity to take, receive, and hold real property, by gift, purchase, devise, bequest, or in any other manner, for the purposes of their creation. Shortly after the passage of the general law of 1859, to wit, at its session of 1861, the General Assembly created a large number of religious and charitable corporations, with like capacity to take, receive, and hold real and personal property; and in the year 1863 it expressly exempted from taxation real and personal property which the American Bible Society, a corporation of New York, then owned or might thereafter acquire in the State of Illinois, not exceeding $50,000 in value; also all Bibles and Testaments in its depositories, and any articles of personal property necessary for the prosecution of its objects. Pri. Laws Ill., 1863, p. 26.

The conclusion is not to be avoided that the State, prior to 1870, authorized, if it did not steadily encourage, the organization of societies for benevolent, charitable, religious, and missionary objects, and endowed them with capacity to acquire by purchase, gift, or devise, real estate for the purposes of their creation. It had not then, nor, so far as we are informed, has it since, passed any statute expressly forbidding corporations of other States, having like objects, from taking, receiving, purchasing, or holding real property in that State to the same extent and for the same purposes as were allowed to its own corpo-

rations of that class.  Nor is our attention called to any statute in force in 1870, or subsequently, which expressly forbade foreign corporations from exercising, within the State of Illinois, the functions with which they were endowed by the respective States creating them, or which made the express permission by statute of that State a condition precedent to the recognition within its jurisdiction of the corporations of other States. Although, as a general proposition, a corporation must dwell in the State under whose laws it was created, its existence as an artificial person may be acknowledged and recognized in other States. "Its residence in one State creates no insuperable objection to its power of contracting in another." *Runyan* v. *The Lessee of Coster*, 14 Pet. 122.  In *Cowell* v. *Springs Company* (100 U. S. 55) we said: "If the policy of the State or Territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way; it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations, or allows corporations to be formed only by general law.  Telegraph companies did business in several States before their legislatures had created or authorized the creation of similar corporations; and numerous corporations existing by special charter in one State are now engaged, without question, in business in States where the creation of corporations by special enactment is forbidden."  In harmony with the general law of comity obtaining among the States composing the Union, the presumption should be indulged that a corporation of one State, not forbidden by the law of its being, may exercise within any other State the general powers conferred by its own charter, unless it is prohibited from so doing, either in the direct enactments of the latter State, or by its public policy to be deduced from the general course of legislation, or from the settled adjudications of its highest court. There was here no such direct legislation during or prior to the year 1870, nor can the existence of such a public policy be inferred from the general course of legislation or judicial decisions in Illinois up to and including that year, in relation to religious, benevolent, charitable, or missionary societies created in other States.

But it is contended that the precise question now under consideration has been heretofore decided by the Supreme Court of Illinois adversely to these views in *Carroll* v. *The City of East St. Louis* (67 Ill. 568) and *Starkweather* v. *American Bible Society* (72 id. 50), and that this court is obliged to follow the construction of the State law and give effect to the public policy of Illinois, as announced by the highest court of that State. Our obligation to follow, without question, these decisions arises, it is claimed, out of the express provisions of the act of Congress declaring that the laws of the several States, except when the Constitution, treaties, or statutes of the United States otherwise require or provide, are to be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. This provision was incorporated in the original judiciary act, and has been retained in the statutes of the United States to the present time. Under it we have often declared that the construction given to a State statute by the highest judicial tribunal of such State is to be accepted in the Federal courts as a part of the statute whenever they are required to determine questions, or ascertain rights arising out of or dependent upon such local statute. But how far the Federal courts, in the ascertainment and enforcement of property rights, dependent upon the statute law, or the settled public policy of a State, are bound by the decisions of the State court, rendered after such rights were acquired or became vested, is a different question, and one of the gravest importance. The rule upon this subject has been announced, with some qualifications arising out of the circumstances of the particular cases, heretofore decided in this court. Its extended discussion is not, however, essential in this case, since the decisions of the Supreme Court of Illinois, upon which counsel for appellees rely, do not, in our judgment, necessarily conclude the precise point here involved.

In *Carroll* v. *The City of East St. Louis* (*supra*), the question before the court was whether the Connecticut Land Company, a corporation created in another State for the sole purpose of buying and selling lands, had power to purchase and hold title to lands in the State of Illinois. The decision was that it could not, for the reason — and no other is assigned — that the com-

pany, if permitted to exercise its functions in Illinois to the full extent authorized by its charter, could acquire lands without limit as to quantity, and hold them in perpetuity; that such privileges had never been accorded by Illinois to her own domestic corporations, and were inconsistent with her settled public policy against perpetuities, as indicated not by express enactment, but with absolute certainty, by the general course of its legislation from the very organization of the State.

Two of the judges dissented from the opinion, so far as it held invalid a transfer of land by the corporation to a purchaser.

The subsequent case of *Starkweather* v. *American Bible Society* (*supra*) involved the title to certain real estate, an undivided interest in which was devised by one Starkweather to the trustees of the American Bible Society, established in 1816, to have and to hold the same for its use, but not to be entitled to the same, or its income, until his youngest child became of age. The claim of the Bible Society was denied, by the court, upon the following grounds: 1. That by the laws of New York, as declared by the highest court of that State, it had not the capacity to take title to real property in New York by *devise*. 2. That New York had no power to create a body incapable of taking land in that State *by devise*, and yet with power to so take lands in a foreign jurisdiction. 3. And by way of argument, that if New York was to so enact, and other States were to so consent, then such bodies might so receive and hold lands; but, said the court, the former had not so enacted, nor had Illinois so consented, since, when the will of Starkweather was probated, Sept. 16, 1867, there was no statute of Illinois which authorized foreign corporations to hold lands *by devise* in that State. 4. The principles announced in *Carroll* v. *The City of East St. Louis* were regarded as conclusive against the claim of the Bible Society, "as," said the court, "all of the inconveniences and injuries are as likely to ensue in this, and other cases like it, as in that." 5. The devise being illegal and void, the court could not decree a sale of the real estate devised and direct the payment of the proceeds to the society.

We are of opinion that the Starkweather case does not deter-

mine the particular question we have been considering. It does not decide that the devise to the Bible Society was void solely because of the absence of some statute expressly and affirmatively authorizing or permitting devises of real estate in Illinois to corporations of other States. The absence of such a statute was referred to, as we suppose, for the purpose of showing that the admitted incapacity of the Bible Society, under the law of its own creation, to take real estate by devise, and its consequent inability to acquire in that mode real estate situated elsewhere, could not be removed or be met by any thing in the legislation of Illinois, since no statute in force when the will was probated conferred upon foreign corporations the right to acquire real property in that State by devise.

The Starkweather case was held to be concluded by the principles announced in the Carroll case, for the reason, perhaps, that the property devised could, consistently with the will of the testator and the charter of the society, have been held for a period of time beyond that allowed to similar corporations of Illinois holding lands in that State. Upon no other ground are we able to understand how the Starkweather case was concluded by the principles announced in *Carroll* v. *East St. Louis.* Neither decision warrants the conclusion that, at the date of the deed to appellant, a benevolent, religious, or missionary corporation of another State having authority under its own charter to take lands, in limited quantities, for the purposes of its incorporation, was forbidden by the statutes or the public policy of Illinois, from taking title, *for such purposes,* to real property in that State, under a conveyance from one of its citizens, duly executed and recorded as required by its laws. The conveyance to the appellant can be sustained without in any degree impairing or doing violence to the fundamental principle enunciated in the Carroll case; viz., that corporations cannot acquire lands in Illinois in large quantities, to be held, or which may be held, in perpetuity. It can also be sustained, without violating the main proposition laid down in the Starkweather case; viz., that a foreign corporation, forbidden by the laws of the State creating it, to acquire lands there, by devise, could not, by that mode, take lands in Illinois, in the absence of a statute of that State assenting thereto. We cannot presume that it is

now, or was in 1870, against the public policy of Illinois that one of its citizens should convey real estate there situated to a benevolent or missionary corporation of another State of the Union, for the purpose of enabling it to carry out the objects of its creation, when that State permitted its own corporations, organized for like purposes, to take real estate within its limits, by purchase, gift, devise, or in any other manner.

We have considered these questions with reference to the law of Illinois at the date of Griffith's conveyance. But our conclusions are strengthened by her subsequent legislation. We refer particularly to the general statute passed in 1872, providing for the organization of corporations for pecuniary profit, or for any lawful purpose except banking, insurance, real-estate brokerage, the operation of railroads (other than horse and dummy railroads), and the business of loaning money, with authority to own, possess, and enjoy so much real and personal estate as shall be necessary for the transaction of their business, and to sell and dispose of the same when not required for the uses of the corporation. All real estate acquired in satisfaction of any liability or indebtedness, and not necessary and suitable for the business of the corporation, was required to be annually offered at public auction, and if not sold within five years, its sale could be enforced by information in the name of the State against the corporation. Sect. 26 of that general statute expressly recognizes the right of foreign corporations to acquire real estate in Illinois. Its language is: "Foreign corporations, and the officers and agents thereof, doing business in this State, shall be subjected to all the liabilities, restrictions, and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers. And no foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided for in this act." Hurd's Ill. Rev. 1879, p. 290.

Distinct provision was made in the same statute for the organization of societies, corporations, and associations, not for pecuniary profit, with capacity to take, purchase, hold, and dispose of real and personal estate for purposes of their organiza-

tion.   The statute imposes on the corporations last described no restrictions as to the quantity of estate they may take and hold, except that it must be for the purposes of their organization. Churches, congregations, or societies formed for religious worship, when incorporated under that statute, in addition to grounds for burying and camp-meeting purposes, were limited to ten acres of ground for houses, buildings, or other improvements for the convenience and comfort of such congregations, church, or society.

If the settled public policy of Illinois in 1870 forbade a benevolent missionary corporation of another State from taking title to real estate in Illinois for purposes of its organization, a general statute would hardly have been passed in 1872 recognizing the right of foreign corporations organized for pecuniary profit to hold real estate in Illinois, to the same extent and under like powers with domestic corporations of the same class.

Appellees, in their pleadings, allege that the lots conveyed by their ancestor to the American and Foreign Christian Union were not required or necessary for the convenience or transaction of its business.   These allegations are both insufficient and immaterial: insufficient, because they may be true, and yet the appellant, with the lots in dispute added to its property, may not have had more real estate than its charter permitted; immaterial, because if, as we hold, the appellant could consistently with its own charter and the law of Illinois take title to real property in that State for the purposes of its creation, its acquisition of a larger quantity of real estate than its charter allowed, or its business required, or was consistent with the law of Illinois, was not a question which the appellees have any right to raise.   If the title passed by valid conveyance from their ancestor, it is of no concern to them that the appellant has acquired or is holding more real estate than its charter authorizes.

We forbear the discussion of any other question arising upon the assignments of error.   It is apparent from the record and the argument of counsel that the decree of the court below was based upon the conclusion that the appellant, being a foreign corporation, was forbidden by the law of Illinois from

taking title to the property in controversy. No proof was taken, nor was the case heard upon the issue as to the mental capacity of Griffith to execute the conveyance of 1870, or as to its having been obtained by fraudulent solicitations and representations upon the part of the agents of the appellant. The parties should have an opportunity to prepare the cause, and have it heard upon those issues.

The decree will be reversed, with directions to overrule the demurrer to the cross-bill and the exceptions to the answer, and for such further proceedings as may be consistent with this opinion.

*So ordered.*