Smith, J.
This action is brought to compel the specific performance by the defendants, of a contract, whereby they agreed to purchase of the plaintiffs certain lands and premises situate in the city of Buffalo. The defense rests upon the allegation that the plaintiffs, when the contract was made and when the deed was made in pursuance of it, had not a perfect title to the premises which they had agreed to convey.
It was shown on the trial, that on ¡November 12, 1831, John W. Clark, being well seized in fee simple of the premises, mortgaged them and other lands to Thomas Day to secure a debt of §3,000, owing by him to Day, and the interest thereon ; that Day foreclosed his mortgage in chancery, and in March, 1811, obtained a decree for the sale of the mortgaged premises to satisfy the amount due on his mortgage ; that at the master’s sale under the decree, the premises in question were struck off and sold to the Girard Bank, a corporation for banking purposes, created and existing under and by virtue of the laws of the State of Pennsylvania, for the sum of $1,625, and the residue of the mortgaged premises sold for the whole amount directed to be raised by the decree, except about $100, and the master conveyed the premises in question to the Girard Bank by the deed dated October 15, 1841. In ¡November, 1853, the Girard *98 Bank sold and conveyed the premises in question, for value, to Heman B. Potter and others, from whom, through sundry mesne conveyances, the plaintiffs derived their title.
By its charter, the Girard Bank was empowered to take, hold, and convey real estate to an amount not exceeding its capital stock (which was $1,500,000), but only such real estate as should be requisite for its accommodation in the convenient transaction of its business, and such as should be mortgaged or conveyed to it in satisfaction of debts previously contracted in the course of its dealings, or purchased at sales upon judgments obtained for such debts, or sales upon judgments in favor of any other person or body politic where the same might be necessary to secure any debt due to said bank.
The sole ground of the defendants’ objection to the plaintiff’s title is, that the Girard Bank had no legal capacity or right to take, hold, or convey these premises. But the defendants concede that a corporation created by another State can exercise in this State all such powers as are given it by the law of comity between States, and that this State by that law accords to corporations created by sister States the same powers which they possess in the States of their creation, unless the exercise of such powers contravenes the law or the settled policy of this State. This is but the concession of well established legal principles. The supreme court of the United States has, in a recent case, very clearly defined these principles, as follows:
“In harmony with the general law of comity obtaining among the States composing the Union, the presumption should be indulged that a corporation of one State, not forbidden by the law of its being, may exercise within any other State, the general powers conferred by its own charter, unless it is prohibited from so doing, either in the direct enactments of the *99 latter State, or by its public policy, to be deduced from the general course of legislation, or from the settled adjudications of its highest courts” (Christian Union v. Yount, 101 U. S. 352). And the court of appeals of this State, in Sherwood v. American Bible Society (4 Abb. Ct. App. Dec. 227), said: “By comity we recognize the existence of a corporation of another State, and permit it to exercise the powers with which it is endowed, in our own State, unless such exercise is repugnant to our policy, or injurious to our interests ” (see also Merrick v. Van Santvoord, 34 N. Y. 208; Bard v. Poole, 12 Id. 495, 505; Mumford v. American Life Ins. & Trust Co., 4 Id. 463, 481, 482; Cowell v. Springs Co., 100 U. S. 55; 2 Kent Comm. 281, 283).
In connection with the legal principles thus laid down, the rule must also be considered which the courts have adopted as applicable to the exercise by corporations of the right conferred upon them by law to purchase, hold, and convey real estate. That rule succinctly stated, is, that where a corporation is authorized to hold and convey real estate under certain circumstances, or for certain purposes, it will be presumed, in the absence of proof to the contrary, that real estate conveyed by it was held and conveyed in pursuance of its powers (Exp. Peru Iron Co., 7 Cow. 540; Farmers’ Loan & Trust Co. v. Curtis, 7 N. Y. 466; Chautanque Co. Bank v. Risley, 19 Id. 369; Yates v. Van De Bogert, 56 Id. 526). The reasons upon which the rule rests are very clearly stated, and its application forcibly illustrated, by Judge Com-stock, in the case of Chautauque Co. Bank v. Risley (supra). He says: “The dealings of a corporation, which on their face, or according to their apparent import, are within its charter, are not to be regarded as illegal or unauthorized without some evidence tending to show that they are of such a character. In the absence of proof, there is no legal presumption that the *100 law has been violated. On the contrary, these artificial bodies, like natural persons, are entitled to the benefit of the rule which imputes innocence rather than wrong, to the conduct of men. A different doctrine would require a corporation, even in many of its ordinary transactions, to show that it had not transcended the limits of its charter. Such a rule, I am confident, has never1 been laid down, and its policy may well be denied, when we consider how much of the business of the community is carried on by associated capital, and how many titles may be endangered if mere presumptions are allowed against the lawfulness of such dealings. . . . '. The plaintiff’s bank had, it is trac, no general authority to deal in real estate ; but it could take and" hold lands for specified purposes, and for specified considerations. The terms of the conveyance to them are consistent with the powers thus-granted. The presumption is in favor of their title, because there is nothing to impeach it; and this presumption, rises into greater importance and value when we consider that if the opposite one be allowed, it may overthrow titles of this nature transmitted to other hands, and when the lapse of time may have impaired or destroyed the means of sustaining them.”
The rules and principles thus laid down, when applied to the case in hand, would seem to demand the conclusion that the Grirard Bank had a right, at least for the purposes and under the conditions specified in its charter, to purchase and convey the premises in question, and that the plaintiff’s title derived from the bank .is valid.
But the defendants’ counsel insists that the evidence in this case shows that the purchase of the premises by the Grirard Bank was not within certain of the purposes for which, by’ the terms of its charter, it was empowered to take and hold real estate. That is to say, it being shown that the bank was a corporation *101 for banking purposes, created by the law of the State of Pennsylvania, and located in the city of Philadelphia, there can be no presumption that the premises could be requisite for its accommodation in the convenient transaction of its business; and the evidence showing that the premises were purchased by the bank at master’s sale, upon a decree for the foreclosure of a mortgage given to secure a debt to a private person, and in an action in favor of that person," proves that they were not mortgaged or conveyed to the bank in satisfaction- of a debt previously contracted in the course of its dealings, or purchased at a sale upon a judgment obtained for such a debt. But I am not prepared to concede that the facts proved exclude the presumption that, these premises, before they were purchased by the bank at the masters’ sale, had been mortgaged or conveyed to it in satisfaction of a debt previously contracted in the course of its dealings. It may well have been that Mr. Clark, who owned these premises and mortgaged them to Mr. Day, the plaintiff in the foreclosure suit, may have had dealings with the bank, in the course of which he became indebted to it, and had mortgaged or conveyed the premises to it for such debt, and that the bank purchased them at the masters’ sale to save the debt. There is nothing in such a presumption at all unreasonable or improbable. On the contrary, it is entirely consistent with the ordinary course of commercial and pecuniary transactions. And in aid of this presumption, we may invoke the well-settled rule, that acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter (Nelson v. Eaton, 26 N. Y. 410, 415; Kent v. Quicksilver Mining Co. 78 Id. 159, 183, 184). And further: for the protection of a title acquired for value, and of so long standing as the plaintiff’s, the court may well hold, that where a corporate act is *102 within the general power of the corporation, and its invalidity arises from something not apparent in the grant of power to the body, and which is extrinsic thereto, one dealing with the corporation in ignorance of that which vitiates, will not be affected thereby 1 (Kent v. Quicksilver Mining Co., supra).
But the Girard Bank was by its charter further empowered to take and hold real estate purchased at sales upon judgments of any person or body politic, where the same might be necessary to secure any debt due to the bank. There can of course be no difficulty in presuming that the purchase by the bank of the premises in question at the master’s sale, was necessary in order to secure a debt due to it. I understand the defendant’s counsel to cdncede that such a presumption would arise in this case. But he seeks to avoid its effect, by insisting that it is against the policy of this State to allow a banking corporation to purchase real estate upon a sale on any judgment not held crowned by the bank itself; and that the purchase by the bank in this case, having been made at a sale under a judgment owned by another, was in contravention of the policy of this State as evinced by its statute law, under which banking corporations in this State are created. It is true that the general banking law of this State provides that banks organized under it can take and hold real estate only under certain specified conditions, one of which is the purchase of lands sold under judgments, decrees, or mortgages held by the bank, and the law does not expressly confer upon such banks the power to purchase real estate at sales upon judgments of any other person or body politic. But I cannot concede that this slight difference between the provisions of our general banking law, and those of the charter of the Girard Bank, can be held to establish a rule of public policy in this State which will prohibit the latter from the exercise *103 of the powers in this respect granted by its charter. The law of inter-state comity, as interpreted by our highest courts, is not restricted by such narrow limits. In Cowell v. Springs Co. (100 U. S. 55), the supreme court of the United Státes said: “If the policy of the State or Territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold .real property, it must be expressed in some affirmative way; it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations, or allows corporations to be formed only by general law. Telegraph companies did business in several States before their legislature had created, or authorized the creation of similar corporations ; and numerous corporations existing by special charter in one State are now-engaged without question in business in States where the creation of corporations by special enactment is forbidden.”
The difference between the provisions of the general banking law of this State and those of the charter of the Grirard Bank is one of form, not of principle. The propriety and necessity of the purchase by a bank of the real property of its debtor at a j udicial sale, in order to secure its debt against him, as other creditors may, is the principle recognized both by our general law and by the charter of the bank. For where a bank finds it necessary to purchase the lands of its debtor sold under a judgment, in order to save or secure its debt against him, it can certainly make no difference upon the broad and general ground of public policy whether such judgment is held by the bank or by another person. It would be easy in such cases for the bank to purchase the judgment of another creditor upon which a judicial sale was pending, and thus to bring itself within the literal words of the statute, Perhaps the Grirard Bank had purchased the decree *104 upon which the premises in question were sold, and held and owned it, at the time of the sale. Under the authority and reasoning of the cases I have cited, it should be presumed that it had done so, rather than that it had acted in violation of thé law. In short, every reasonable, I had almost said every possible presumption, may justly be indulged for the protection of a title acquired by bona fide purchase, and of so long standing as is the plaintiff’s.
It follows from these views that the plaintiff’s title must be adjudged valid and perfect, and that the defendants’ refusal to perform their contract of purchase was without legal excuse, and the plaintiffs must have the judgment demanded in their complaint, with costs of the action.
No appeal was taken.