### KERCHNER v. GETTYS.

### SAME v. HUCKABEE.

1. Negotiable notes given for a completed purchase of shares of stock in a corporation or joint stock company are based upon a sufficient consideration, the certificates of stock having been delivered to the seller as agent of the purchasers, or else left with him as security for the payment of the notes.
2. These certificates were given to the seller to be delivered to the purchasers when the notes matured or were paid, before which time a steamboat, the only property of the company, was lost to the company. *Held*, that there was no failure of consideration to the notes.
3. *Quære.* Can a purchaser of shares in a corporation, in action for the purchase-money, deny its corporate existence?
4. A corporation chartered by the laws of one State may lawfully do business in another State unless forbidden by its charter, or by the laws of such other State.
5. A corporation chartered by the laws of North Carolina may do business in this State, and may select for its officers citizens of this State.

---

Before WALLACE, J., Kershaw, February, 1882.

Actions by F. W. Kerchner against J. L. Gettys and A. A. Huckabee, heard together. To the statement made in the opinion will be added only the following extract from the agreed case: "The company was chartered under the general law of North Carolina, an abstract of which is furnished. Neither Gettys nor Huckabee ever attended any of the meetings of the stockholders or took any part in the management of the boat. E. Parker was elected president at a meeting of stockholders held in South Carolina, and F. L. Phelps, secretary; both said parties were residents of South Carolina." All of the points considered by the court are raised in the exceptions.

*Messrs. J. T. Hay* and *Workman & Son,* for appellants.

The company was chartered in North Carolina, but never organized except in South Carolina. It therefore had no legal existence here. 13 *Pet.* 519; 27 *Me.* 509; 1 *Sumn.* 47; 14 *Pet.*

129; 1 *Blatchf.* 628; 1 *Black* 286; 4 *Jones Eq.* 231; 26 *Me.* 326; *Field Corp.*, §§ 25, 243; *Moraw Priv. Corp.*, § 535. The notes were not given for any interest in a steamboat, nor could it have been, as the law was not complied with. *Rev. Stat. U. S.*, § 4170. If so, then there has been a failure of consideration. *Blackb. Sales* 199; *Add. Cont.*, §§ 554, 575, 585, 662; 1 *Pars. Cont.* 462. The stock being a nullity, the consideration has failed. 1 *Dan. Neg. Inst.* 177.

*Messrs. W. M. Shannon, W. D. Trantham,* contra, upon the point of the legal existence of the corporation in this State, cited *Moraw Priv. Corp.*, § 502; 13 *Pet.* 519; 101 *U. S.* 356. The defendants are estopped from denying a corporate existence. 14 *Johns.* 238; 16 *Mass.* 94; 6 *N. H.* 164.

February 15th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. These two cases, involving the same questions, were heard, and will be considered together. They were ordinary actions upon promissory notes, and the defenses were failure and want of consideration. By consent they were heard by the Circuit judge, without a jury, upon an agreed statement of facts, substantially as follows:

The Palmetto Steam Boat Company was chartered in 1873 by the State of North Carolina, but not by the State of South Carolina, for the purpose of doing a general freight, passenger and towing business upon the waters of North and South Carolina. The only property owned by the company was a steamboat called "The Lillington," which was purchased and placed upon the Wateree river, in South Carolina, and seems to have been engaged in passenger and freight traffic between the bridge of the W. C. & A. Railroad Company and Parker's Landing, on that river. On May 13th, 1874, the plaintiff, who was the owner of one-half or more of the stock of the company, contracted with Gettys for the sale of four shares, and with Huckabee for the sale of two shares of said stock. These parties accordingly gave their negotiable notes to the plaintiff, dated May 14th, 1874, payable six months after date, the one

for $200 and the other for $100. Thereafter, but at what particular date is not stated, certificates for four shares of said stock were filled out in the name of Gettys, and for two shares in the name of Huckabee, signed by E. Parker, president, and F. L. Phelps, secretary, citizens of South Carolina, and delivered to the plaintiff to be delivered to the defendants when their notes matured or were paid. A short time before the maturity of these notes "The Lillington" partially sank in the Wateree river, with a large cargo of rosin, and the company not being able to pay the expenses incurred in saving the cargo and raising the boat, it was sold under a decree of the United States Court, obtained by one English, who had been employed for that purpose, for an amount insufficient to pay his claim. The Circuit judge held that there was a sufficient consideration to support the notes; that there was no failure of consideration, and that the certificates of stock were delivered to the plaintiff as agent of the defendants, and rendered judgment for the plaintiff in both of the cases.

From these judgments the defendants appeal upon various grounds set out in the record. We do not deem it necessary to make a detailed statement of the grounds of appeal, for we think the only questions in the case are: 1. Whether there was any consideration originally for the notes; and, if so, 2d. Whether such consideration has failed.

The first question depends upon whether there was a completed sale of the stock, for, if so, it can scarcely be doubted that the transfer of shares in a joint stock company constitutes a sufficient consideration to support a note given for the price agreed upon for said shares. There can be no doubt that the defendants contracted to buy from the plaintiff shares of the stock, and actually gave him their *negotiable* notes for the price agreed upon. They had, therefore, done everything required upon their part to complete the purchase. There is as little doubt that the plaintiff procured certificates of stock, to be issued by the proper officers of the company in the names of the defendants, and this operated as a transfer, by him to them, of the property in or title to the stock.

The fact that these certificates were never actually delivered to

the defendants personally, cannot affect the question. It does not appear that they ever applied for and were refused possession. On the contrary, the Circuit judge finds as matter of fact (and in a case like this his finding of fact must be regarded as having the same force and effect as the verdict of a jury) that the certificates were delivered to the plaintiff as the agent of the defendants, which, of course, is equivalent to a delivery to them personally. The necessary inference from the fact that the officers of the company made out these certificates in the names of the defendants, and parted with the possession of them by delivering them to the plaintiff, would be that the defendants stood on the books of the company as stockholders, and as such entitled to exercise all the rights belonging to stockholders, and the fact that they never saw fit to claim or exercise their rights as such, cannot have the effect of depriving them of their character as stockholders.

If these certificates were left in the hands of the plaintiff as a security for the payment of the notes, as seems to be the legitimate inference from the conduct of the parties, that would be nothing more, in effect, than a mortgage to secure the payment of said notes, and would, of course, imply ownership of the stock by the defendants. It is scarcely conceivable that defendants would give their negotiable notes for property to which they had acquired no title, and we are, therefore, forced to conclude that the true meaning of the transaction was that the defendants had bought the stock on a credit, and only left the certificates in the hands of the plaintiff as security for the payment of the notes, at maturity, and that upon payment of their notes they will be entitled to demand possession of the certificates of stock. There was, therefore, no want of consideration for the notes.

Our next inquiry is, whether there has been a failure of consideration. The loss of the boat, constituting, as it did, the principal, if not the sole property of the company, cannot operate as a failure of the consideration, for the thing purchased was not the boat, or any undivided interests therein, but shares in the stock of the company, and to these the defendants are still entitled. The stock of a company is a totally different thing from the property owned by the company, and surely it cannot

be said that because a corporation or joint stock company loses its property by some accident incident to the business in which it is engaged, that the purchaser of shares therein is thereby released from the payment of the price at which he has bought such shares from another stockholder. That is a loss which falls in common upon all the stockholders, and it would be not only without any warrant in law, but grossly inequitable, to throw it upon any one or more of them for the purpose of relieving those who may have bought some of the stock on a credit, and had not paid the purchase-money before the loss occurred. There is not the slightest evidence in this case tending to show that the loss of the property of this company was the result of any fault of the plaintiff; nor is there any evidence that the plaintiff gave any guaranty whatever that the stock should be worth as much at the maturity of the notes as it was at the time they were given. We are, therefore, unable to discover any ground upon which it can be said that there has been a failure of the consideration for which these notes were given.

The fact that the company, in which the defendants bought shares, was a foreign corporation doing business in this State, cannot be allowed to affect the questions raised. Whether the defendants, after recognizing the existence of such corporation by the purchase of shares therein, are now in a condition to question its legality, might well be worth consideration; but aside from this, it is now well settled by the cases cited in respondent's brief, that a corporation created by the laws of one State may lawfully do business in another State, unless forbidden by its charter or by the laws of such other State. *The Bank of Augusta* v. *Earle,* 13 *Pet.* 519; *Christian Union* v. *Yount,* 101 *U. S.* 352. It is not only not suggested that there was anything in the charter of this company forbidding it from doing business in this State, but, on the contrary, it is expressly stated that it was chartered " for the purpose of doing a general freight, passenger and towing business upon the waters of North and South Carolina." Nor are we aware of any law or public policy of this State either expressly or impliedly prohibiting such a corporation from doing business in this State.

So, too, we see nothing illegal or extraordinary in the fact

that the president and secretary of this foreign corporation were citizens of South Carolina. It is a matter of common notoriety that one of the largest and most important corporations in this State now has for its president, and some of its other officers, citizens of the State of New York. In the absence of any prohibition in their charter, the stockholders in a corporation can select whomsoever they may please to manage its affairs, and persons dealing with such corporation have no right to object.

The judgment of this court is that the judgments of the Circuit Court, in the two cases above stated, be affirmed.