No. 11,499.

Frank P. Gravely vs. Southern Ice Machine Company.

Any service which would be sufficient, as against a domestic corporation, may be authorized by the statute of a State to commence an action against a foreign or non-resident corporation  It may, accordingly, be made upon the president of a foreign corporation during the time he may be temporarily abiding within the jurisdiction of the court when the suit is brought.

A judgment rendered in an action thus commenced against a foreign corporation will be valid and can be enforced against any property at any time found within the State.

A party having undertaken, on behalf of a foreign corporation, to effect sale of an ice machine and accompanying praphernalia to persons domiciled in this State, for a designated and fixed commission on the amount of the sale effected, payable when the plant is turned over to the purchaser and settled for at a given date, is entitled to payment of such commissions at that date, notwithstanding litigation arises between the contracting parties with reference to the vendor's fulfilment of its contract, which operates a delay in settlement between them.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Branch K. Miller* for Plaintiff and Appellee.

*Denegre & Denegre* for Defendants and Appellants.

The opinion of the court was delivered by

Watkins, J. This suit is brought upon an alleged contract for the recovery of six thousand one hundred and seventy-five dollars, as commissions of five (5) per cent. on sales made of its goods.

Defendant first interposed an exception to the want of citation— it " being a non-resident corporation of the State of Tennessee, and not susceptible of being brought into court except by attachment."

This exception having been overruled, answer was filed, which pleads a general denial, coupled with the averment "that if the

Gravely vs. Ice Machine Company.

court should hold that any compensation is due to plaintiff, it is only on such amount as may be received by the defendant from McDonald & Hart."

The answer further states that it made a sale of an ice machine plant to McDonald & Hart, of the city of New Orleans, to be by it manufactured in Chattanooga, Tenn., and shipped to them. "That said ice machine plant was by it manufactured in Chattanooga, and shipped to McDonald & Hart in New Orleans, who agreed to pay for the same, but have not yet done so. That defendant has been forced to bring suit in this (the district) court for the amount due on said machine, and that Hart & McDonald contested, claiming that nothing is due to defendant, and that it should be compelled to take back the machine and refund so much of the purchase price as has been paid on account."

The court *a qua* first gave the plaintiff judgment for five thousand five hundred dollars, less a credit of two hundred and fifty dollars, but on a motion for new trial the judge revised his previous decree *ex proprio motu*, and reduced the amount awarded the plaintiff to two thousand five hundred dollars, less credit of two hundred and fifty dollars.

It is from that judgment that the defendant has appealed; and the plaintiff has answered the appeal, and, in his answer, insists that the judgment in his favor should be increased to five thousand five hundred dollars, and affirmed as thus amended.

## I.

In this court the defendant insists that the exception taken by it in the lower court should have been sustained and the suit dismissed. That is to say that the defendant being a Tennessee corporation it could not be brought into the Civil District Court of the parish of Orleans, La., by means of citation personally served upon its president while temporarily sojourning here, and thereby subject it to a judgment of that court.

Under our law a corporation is an intellectual being, who may be sued in our courts as natural persons are, and in quite a similar case we held and treated a New Jersey corporation as a "foreigner," in the sense of the Code of Practice 163—that is to say "one who has no known place of residence in the State," and who may, consequently, be cited wherever it is found. State vs. Buck and Fruit Company, 46 An. 656.

That suit was brought in the Civil District Court of the parish of Orleans against Charles C. Buck, of Baltimore, Md., and the Plaquemines Tropical Fruit Company, incorporated under the laws of New Jersey, of which Charles C. Buck was president.

In the lower court the defendant excepted to the jurisdiction of the court *ratione materiæ et personæ*, but same was overruled by the judge *a quo*, and we reached the same conclusion at which he arrived and sustained his ruling.

On that question we said:

" We are of the opinion that (the suit) was correctly instituted in the parish of Orleans, notwithstanding the *res* is situated in the parish of Plaquemines, the defendant Buck having been *personally* served with citation while temporarily abiding in the city of New Orleans, and he being at the time president of the defendant company, and both being citizens of other States than Louisiana."

Again:

" Considering the question from the standpoint of the defendants' personal domicile, it is clear that they had no place of domicile or residence in the State that was known to the plaintiff at the inception of the suit.

" The property being situated in this State, and the defendant, Buck, being temporarily present in the parish of Orleans, it was competent for the court of that jurisdiction to cite him to appear and answer therein; and he being president of the defendant company, it could be likewise cited into court." *Id.*, 666.

That was a very important litigation, involving large values, and it was defended by able counsel. After final judgment was rendered against the defendants by this court, they prosecuted a writ of error to the Supreme Court; the writ was dismissed and the judgment of this court affirmed.

We have ventured this statement, because counsel for defendant so strongly rely upon decisions of the Supreme Court, as affirming the principle for which they contend. It seems quite evident to our minds that, if it had been applicable to the case of *any* non-resident corporation, it would have been applied in that case.

In this case we have all the conditions of that case—the person and the *res* being within this jurisdiction—the citation was good and effective, within the spirit and intendment of our Code.

The case of Hume vs. Railway Company, 8 Bissel, 31, is not appli-

cable, because the suit was brought against an alleged *agent* of the non-resident corporation, and the court simply held that " the presence then of the *agent* of a foreign corporation is not the presence of the corporation within the meaning of the act, any more than the presence of the agent of a natural person, a citizen of another State, is the presence of the principal."

That was a suit in damages for a railway accident brought in a Federal court.

On the contrary, in Hagermann vs. Empire State Company, 97 Pennsylvania State, 534, it was held that " suit may be instituted against a foreign corporation by the service of process upon an *agent* of said corporation within this commonwealth in the mode prescribed by the act of March 21, 1849 (3 Pamph. L. 216), notwithstanding the fact that the corporation has failed to establish an office in this commonwealth," etc.

In Pope vs. Manufacturing Company, 87 New York, 137, it was held that any service which would be sufficient as against a domestic corporation may be authorized to commence an action against a foreign corporation.

In that case the action was commenced by a summons served on the president of the non-resident corporation, who was, at the time, within the jurisdiction of the State court.

The court say :

"A judgment to be rendered in an action thus commenced against a foreign corporation will be valid for every purpose within this State and can be enforced against any property at any time found within this State. Its effect elsewhere need not now be determined."

And these decisions do not differ materially from the jurisprudence of the Supreme Court, because they have held in Christian Union vs. Yount, 101 U. S. 352, that "although, as a general proposition, a corporation must dwell in the State under whose law it was created, its existence as an artificial person may be acknowledged and recognized in other States."

This is but the affirmation of the principle that was announced by that court many years ago, and on which many subsequent opinions have been predicated; in Lafayette Insurance Company vs. French, 18 Howard, 404, the leading case on the question, the court say :

" In more general terms the doctrine of this court, as well as the courts of many of the States, is, that the act of Congress was not

designed to displace that principle of natural justice which requires a person to have notice of a suit before he can be conclusively bound by its result; nor those rules of public law which protect persons and property within one State from the exercise of jurisdiction over them by another.

"This corporation, existing only by virtue of a law of Indiana, can not be deemed to pass personally beyond the limits of that State. Bank of Augusta vs. Earle, 13 Peters, 519. But it does not follow, necessarily, that a valid judgment could be rendered against it *only* in that State. A corporation may sue in a foreign State by the attorney there; and if it fails in the suit, be subject to a judgment for costs. And so if a corporation, though in Indiana, should appoint an attorney to appear in an action brought in Ohio, and the attorney should appear, the court would have jurisdiction to render judgment, in all respects as obligatory, as if the defendant were within the State. The inquiry is, not whether the defendant was personally within the State, but whether he, or some one authorized to act for him in reference to the suit, *had notice* and appeared; or if he did not appear, whether he was bound to appear or suffer a judgment by default.

"And the true question in this case is, *whether this corporation had such notice of the suit, and was so far subject to the jurisdiction and laws of Ohio*, that it was bound to appear or take the consequences of non-appearance."

After further discussion of these general principles applicable, the court then said:

"Nor do we think the means adopted to effect this object are open to the objection that this is an attempt improperly to extend the jurisdiction of the State beyond its own limits to a person in another State. Process can be served on a corporation only by making service thereof on some one or more of its agents. The law may, and ordinarily does, designate the person on whom process can be served. For the *purpose of receiving such service, and being bound by it, the corporation is identical with such agent or officer. The corporate power to receive and act on such service, so far as to make it known to the corporation, is thus vested in such officer or agent.*" (Our italics.)

Now what is the case before this court?

The defendant, a foreign corporation, dwelling in the State of

Tennessee, sent its recognized agent into the State of Louisiana endowed with special authority to employ the plaintiff to negotiate with McDonald and Hart, of the city of New Orleans, for sale to them of an ice manufacturing plant. That the plaintiff was thus employed, and through his agency a sale of a plant was negotiated with said parties at the price of one hundred and ten thousand dollars, and same was by the defendant afterward established in said city.

Disagreement between these contracting parties arose; a suit followed in the courts of this city and State, which is still pending.

While within the State of Louisiana and in this city superintending this work, the president of the corporation was personally cited and served with process in this case, asking the enforcement of plaintiff's demand for compensation for commissions under his contract with the company.

In this situation we are of opinion that the District Court thereby acquired full and complete jurisdiction over the defendant corporation *pro hac vice*.

The principle to be kept in mind, and on which the jurisdiction of the Federal courts is predicated, is the *citizenship* of the defending corporation, and, unless the character of the business of the corporation conducted in a foreign State be of such a character as to constitute it a *citizen* of the latter State *pro hac vice*, the Federal jurisdiction is not complete.

But in a State court the rule is different—the only question there being one of proper and effective *service of process upon an officer legally representing the corporation*, whereby it can be brought into court and subjected to judgment; or of proper *notice* upon an officer of the corporation to bring the matter in litigation to its attention, and require its action.

The rule in such case is identically the same as that in reference to any domestic corporation—the effect of the judgment to be rendered being confined to its property within the jurisdiction of the courts of the State.

Our conclusion is that the service of citation on the president of the defendant corporation, while temporarily abiding here, is a good and effective service, on which a valid judgment may be founded, which may be enforced against any property of the defendant company within the State.

## II.

On the merits, we think the case is plainly with the plaintiff.

On the trial there was evidence adduced over the defendant's objection and exception which tended to show an alteration in the *terms*, or rather a diminution of the amount of the commissions the plaintiff was entitled to receive under his contract.

The objection taken was, in effect, that the plaintiff should be confined to proof of the *identical* contract alleged upon.

But the record discloses the fact that the counsel for the defendants first opened up the inquiry as to the letter of date October 21, 1891, which the plaintiff addressed to the defendant, for, during the interrogation of one of its principal witnesses, the following occurred, viz.:

"Q. Does that letter correspond in any way with the agreement you made with Mr. Gravely—the letter dated October 21, 1891?

"A. This letter is exactly according to the agreement that we had on the Hart and McDonald matter—fifteen hundred dollars in bonds and one thousand dollars in cash."

Thereupon the plaintiff's counsel filed the letter in evidence.

This evidence does not show any different *contract* from the one alleged in the petition. It remains the same in all respects except as to the *amount* of commissions the plaintiff was entitled to receive under it.

This is not the case of suit on a contract and a recovery on a *quantum meruit*.

The evidence is in writing, and it forms a part of the contemporaneous transactions between the parties in reference to the ice machine plant that the defendant sold to Hart & McDonald, and delivered to them in this city.

It is both pertinent and competent evidence.

The following is the portion of the letter that is applicable, and we have clipped it from the defendant's brief, viz.:

"*I have also charged your account, as per agreement, two thousand five hundred dollars, commissions on sale to Hart & McDonald—one thousand payable in cash and one thousand five hundred in bonds of Municipal Ice Company; commissions on sale to Pascagoula Ice Company (L. T. Belt), payable seventy-five dollars in cash and six hundred dollars in stock of the company. Please send me credit memorandum of above.*

"*In our agreement the question of when commissions are payable was not broached. I suppose, as is customary, they are payable when plant is turned over to purchaser and settled for.*

"*Please let me know if this is correct.*

"*Yours truly,*

"F. P. GRAVELY."

The part of the latter that refers to commissions on sale to the Pascagoula Ice Company may be disregarded, as that portion of the contract is not insisted upon.

The following is a part of the plaintiff's testimony, viz.:

"Q. According to your agreement with the defendant company, *when* were you to be paid whatever commissions were coming to you?

"A. I was to get one thousand dollars out of the first cash payment.

"Q. To be paid by whom?

"A. Paid by Hart & McDonald to the Southern Ice Machine Company. And the balance was payable in bonds.

"Q. What *time* were you to get that payment?

"A. They told me that I would be paid when the work was completed; and the work would be completed by the first of April, as they were under a penalty to have it completed by that time.

"Q. Did you expect to get paid on the first of April?

"A. Yes.

"Q. Were you paid on the first of April?

"A. No; nothing except that two hundred dollars.

"Q. Do you know whether or not the defendant had any difficulty in collecting whatever money was due?

"A. Mr. Hart told me that he had paid something over fifty thousand dollars on account, and that the balance was not paid.

\*      \*      \*      \*      \*      \*      \*      \*

"Q. Your first arrangement, as shown by these letters, was that you were to get five per cent. on all sales consummated through your agency?

"A. Yes.

"Q. How did that arrangement come to be changed to one thousand dollars in cash and fifteen hundred dollars in bonds.

"A. Because they said they had sold the machinery at a very low

price and could not afford to give me the full commission.    And I told them that, under the circumstances, I would accept one thousand dollars in cash and the balance in bonds."

The plaintiff says he was entitled, under his original agreement, to five per cent. commissions on the gross amount of the defendants' contract with McDonald & Hart, which was one hundred and ten thousand dollars for the ice machine plant sold to them.

Again, the following occurred in the course of the interrogation of the plaintiff, as a witness, viz.:

"Q. Have you received that one thousand dollars in cash and fifteen hundred dollars in bonds, which it is claimed you were to get under that arrangement, which was substituted for the original agreement?

"A. No; I have not received it, as I said I should have received it on the 1st of April, 1892.

"Q. You did not receive it?

"A. No; I did not.

"Q. Why do you say that you ought to have received it on the 1st of April?

"A. Because Mr. McArdle told me that his company was under a forfeit of six hundred to seven hundred dollars a day to have the plant completed on the 1st of April.

"Q. Did he say that he would have the plant completed by the 1st of April?

"A. Yes.

"Q. Was it to be paid for then?

"A. That was my understanding of it."

During the interrogation of the president of the defendant company, as defendants' witness, the following occurred, viz.:

"Q. Mr. Herron, in the arrangement made with Mr. Gravely in regard to the payment to him of the one thousand dollars in cash, and one thousand five hundred dollars in bonds, was anything ever said between you, or put in writing as to the time when he was to get his payment?

"A. No, sir; it was understood that when the work was completed, and settled for, he was to get his commission.

"Q. Has that work been settled for yet?

"A. No, sir.

"Q. Has Hart & McDonald made settlement with the Southern Ice Machine Company yet?

"A. No, sir."

This witness then states circumstantially the situation of the matter, as between Hart & McDonald and the company—the substance of which was that, after the latter had made a large cash payment on account, they declined to accept the plant, and demanded the revocation of the contract, and the restitution of the money they had advanced on the contract; they assigning as cause for this course of action, failure on the part of the company in complying with the agreement.

Hence the company brought suit against Hart & McDonald to compel them to perform their part of the contract—necessarily affirming full performance on its part.

It will be observed that the question which was propounded to the president was very guarded. The question was: " In the arrangement made with Mr. Gravely in regard to the *payment* to him of * * * *was anything said between you, or put in writing* as to the *time* when he was to get this payment?"　(Our italics.)

And the reply was equally guarded, for it was, viz.:

"No, sir; *it was understood* that when the work was completed and settled for, he was to get his commission."　(Our italics.)

But the president did not make the contract with Mr. Gravely, and he was not present when it was made. It was entered into in the city of New Orleans between the plaintiff and Mr. McArdle, as the *per pro.* of the company. This appears by the letter of the company of date October 23, 1891, in reply to the previous letter from the plaintiff to the company, of date October 21, 1891, previously quoted in this opinion.

It is as follows, viz.:

"CHATTANOOGA, Tenn., October 23, 1891.

"*Mr. F. P. Gravely, New Orleans, La.:*

"DEAR SIR—Yours of the 21st inst. to hand, and in reply would say our Mr. McArdle will be in New Orleans in a few days and will take up the matter in person.

" Enclosed we return your letters.

" Yours truly,

(Signed)　　　　　　　　" SOUTHERN ICE MACHINE CO.,

" CHARLES HERRON."

There the company let the matter drop, and subsequently Mr. Mc-Ardle did take the matter up and consummate it with the plaintiff, and there were no further or other dealings between the plaintiff and the company direct in reference to it.     Hence there *was no such understanding* between Mr. Herron and the plaintiff as he intimates. And it becomes quite clear, in view of this letter, why there was nothing said between them, and nothing *put in writing* on the subject of " the arrangement made with Mr. Gravely in regard to the payment."

In view of this evidence and in the absence of any countervailing statement on the part of Mr. McArdle, the affirmation of the plaintiff is undenied and undeniable.

In the light of these facts, the concluding part of the plaintiff's letter, viz. : " I suppose, however, as is customary, they are payable when plant is turned over to purchaser and settled for," is explained to mean payable when the work was completed and turned over to the purchasers, Hart & McDonald, and, *presumably*, to be settled for, of course.

The statement of the plaintiff positively fixes the date of payment on April 1, 1892, and he assigns as a reason for making that statement that McArdle said the ice plant was to be, by that date, completed under the contract, and that it stipulated a daily penalty of six hundred dollars for non-completion after that date.

This statement was not denied on the other side.

The company is in court, asserting that McDonald & Hart are due them the balance of the contract of fifty-five thousand dollars, on the theory that the contract has been fulfilled, and that McDonald & Hart are in default.

The company has realized from McDonald & Hart the sum of fifty-five thousand dollars in cash, and has paid the plaintiff two hundred dollars on account, and now reverses its position and asserts that *nothing* is due until the end of its litigation with McDonald & Hart.

The payment of the two hundred dollars to the plaintiff, in our opinion, constitutes an admission of liability as to *time* when payment should have been made of the one thousand dollars in cash, at least; for, if two hundred dollars in cash were *due*, the one thousand dollars were due also.

But is it true that the defendant can halt proceedings here and

Gravely vs. Ice Machine Company.

turn the plaintiff around to the *chances* of its litigation with Hart & McDonald being successful, and compel him to await its termination before asserting his demand? We think not.

That would place the plaintiff in the attitude of guaranteeing the defendant's work in the establishment of the ice plant, and the safe transit and delivery of the goods sold. The business of the plaintiff was simply to solicit business—that is to say, to bring the company. into communication with customers; and in case that intercourse resulted in the sale of an ice plant he was entitled to commissions.

His work was then accomplished, and when the company's contract was fulfilled and the plant turned over to the purchasers, his commission was *due*, as the settlement of the purchase price was then to be made. But if litigation resulted between the contracting parties with regard to the *construction* of the work, it could not interfere with the rights of the commission agent to receive the amount of fees stipulated to be paid upon the completion of the work.

On the company's own theory, in its suit against Hart & McDonald, it had completed its contract, and was entitled to full payment of the balance due. With what consistency can it say to the plaintiff that it may be mistaken in that view after all? and hence nothing is due until the end of that litigation.

Suppose the company should lose the suit, and judgment be rendered therein comformably to the prayer of defendants, and it be decreed to make restitution of the fifty-five thousand dollars it had received, and the contract be canceled? Then, according to its theory, the plaintiff would be entitled to nothing, and would be under obligation to place matters in *statu quo* by returning to it the two hundred dollars he had already received.

Surely this can not be a correct interpretation to place upon the defendant's engagement with the plaintiff, and we decline to do so.

Our opinion concurs with that of our learned brother of the district bench.

But we think his judgment awarded the defendant credit for fifty dollars more than it had paid. Instead of a credit for two hundred and fifty dollars there should be credit given to the defendant of two hundred dollars only.

It is therefore ordered and decreed that the judgment appealed

from be so amended as to reduce the defendant's credit from two hundred and fifty dollars to two hundred dollars, and that as thus amended the same be affirmed.

Rehearing refused.